UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FIRST AMERICAN TITLE INS. CO.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-662** |
| **2500 LOUISIANA AVE. HEALTHCARE, LLC, CAMERON MANAGEMENT LLC** | **SECTION: "H"** |

### ORDER

Before the Court is Defendant 2500 Louisiana Avenue Healthcare LLC's Motion for Summary Judgment (Doc. 17). For the following reasons, this Motion is **GRANTED.**

### BACKGROUND

This interpleader action arises out of a terminated agreement for the purchase and sale of immovable property (the "Agreement"). 2500 Louisiana Avenue Healthcare, LLC ("2500 Louisiana") and Cameron Management, LLC ("Cameron") entered into the Agreement on July 15, 2021, wherein Cameron would purchase a piece of immovable property from 2500 Louisiana. The property in question is located at 2500 Louisiana Avenue in New Orleans, Louisiana and is currently being leased by Bio-Medical Applications of Louisiana ("Tenant"). First American Title Insurance Company ("First American") agreed to act as escrow agent and hold $100,000 in earnest money from the buyer, Cameron. Under Article 3 of the Agreement, the earnest money

1

was to be held by First American and either credited against the purchase price at closing or returned to the Buyer in accordance with the Agreement.[1]

Hurricane Ida hit southeast Louisiana on August 29, 2021, causing widespread damage and power outages. As a result, 2500 Louisiana and Cameron executed an amendment to the Agreement on August 31, 2021, extending the original closing date to September 16, 2021.[2]

However, on September 8, 2021, the managing member of Cameron informed 2500 Louisiana and First American that it was cancelling the sale and requested the return of the earnest money pursuant to Section 9 of the Agreement. Cameron cited six reasons for the cancellation of the Agreement: (1) that there had been no response to a call placed to the seller's representative, (2) there were reports of power outages and other essential services in the area, (3) Tenant's business appeared to be closed, (4) Cameron's insurance agent gave it an indeterminate date for writing flood insurance for the property, (5) the bank could not fund the loan without proper landlord flood insurance, and (6) the new time frame no longer worked for Cameron.[3] Cameron then purported to cancel the sale citing Section 9 of the Agreement and requested the return of the earnest money.[4]

2500 Louisiana responded to the email and addressed Cameron's concerns, stating that Tenant had an emergency generator and only experienced a brief power outage, that Tenant's business was open and

---

[1] Doc. 1-1 at 1.
[2] *Id.* at 16.
[3] Doc. 17-7.
[4] Section 9(a)(i) of the Agreement provides that in the event of "material damage" to the property prior to closing, that Cameron may terminate the agreement and request the return of the escrow money. Section 9(c) defines "material damage" as "(i) damage for which the cost of repair equals or exceeds $100,000.00; or (ii) damage that is sufficient to give Tenant the right to terminate the Lease (as provided therein) unless Tenant waives such right in writing." Doc. 1-1 at 7.

operating, that the transaction was not conditioned upon financing, and that the insurance underwriter may be able to provide flood insurance if it knew there was no damage to the property.[5]

After this exchange, both parties made directly inconsistent demands upon First American for the earnest money, claiming that the other had breached the Agreement and that it was entitled to the funds.[6] Pursuant to Section 22 of the Agreement, First American brought this action in interpleader, deposited the earnest money with the Court, and was dismissed from this matter on July 20, 2022.[7]

Now before the Court is Defendant 2500 Louisiana's Motion for Summary Judgment arguing that it is entitled to the earnest money, as well as fees and costs. Defendant Cameron opposes.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[8] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9]

---

[5] Doc. 17-1 at 4.
[6] Doc. 1 at 3. In Article 12 the Agreement provides that if the seller fails to fulfill their obligations, the buyer may seek specific performance or terminate the agreement and receive a return of the earnest money. If the buyer breaches the agreement, however, the seller's only remedy is to receive the earnest money as full and agreed upon liquidated damages. Doc. 1-1 at 8.
[7] Doc. 15. Section 22 provides that in the event of a dispute, First American has the right to tender the escrow money in the registry of the court and to be discharged from all duties under the Agreement. Doc. 1-1 at 11.
[8] Fed. R. Civ. P. 56(c) (2012).
[9] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[10] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[11] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[12] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[13] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[14] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[15]

## LAW AND ANALYSIS

Defendant 2500 Louisiana moves for summary judgment, asking the Court to declare that 2500 Louisiana is entitled to the earnest money, as well as its fees and costs. Defendant Cameron opposes, stating that the motion for summary judgment is premature and that genuine issues of material fact exist.

---

[10] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528 (5th Cir. 1997).
[11] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[12] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[13] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[14] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[15] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

At the outset, Cameron argues that this Motion is premature and asks the Court to dismiss the motion with leave to refile after discovery.[16] Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may defer consideration of the motion or allow the nonmovant additional time for discovery.[17] "To justify a continuance, the Rule 56(d) motion must demonstrate (1) why the movant needs additional discovery; and (2) how the additional discovery will likely create a genuine issue of material fact."[18] The Rule 56(d) movant "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion."[19] Cameron has not satisfied the Rule 56(d) requirements for a continuance because they did not provide a declaration or affidavit in support of their request or identify specific facts that additional discovery will likely reveal. Accordingly, this Motion is not premature, and the Court shall consider it.

General principles of contract interpretation dictate that "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."[20] Furthermore, the Court notes that looking beyond the four corners of the document is allowed only if there is ambiguity.[21] "Ordinarily, when the words to a contract are clear, explicit and lead to no absurd consequences, the

---

[16] Doc. 22 at 10.
[17] Fed. R. Civ. P. 56(d) (2012).
[18] Weaver v. Harris, 486 F. App'x 503, 505 (5th Cir. 2012).
[19] McKay v. Novartis Pharm. Corp., 751 F.3d 694, 700 (5th Cir. 2014).
[20] LA. CIV. CODE art. 2050.
[21] Godchaux v. Conveying Techniques, Inc., 846 F.2d 306, 314 (5th Cir. 1988) (citing Oceaneering Int'l, Inc. v. Black Towing, Inc., 479 So. 2d 421 (La. App. 1 Cir. 1985)).

meaning and the intent of parties must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence."[22]

Pursuant to the clear terms of the Agreement, in the event of a breach by 2500 Louisiana, Cameron may command specific performance or demand a return of the earnest money.[23] If, however, Cameron breaches the Agreement, 2500 Louisiana's sole remedy is to receive the earnest money as liquidated damages.[24] Thus, in order to determine who is entitled to the earnest money the Court must determine which party breached the Agreement.

The first issue is whether Cameron validly terminated the Agreement pursuant to Article 9. Cameron cancelled the sale eight days prior to closing citing Article 9, which provides that the Agreement can be terminated in the event of material damage and that the earnest money would be returned to Cameron. Material damage is defined as damage for which repairs would exceed $100,000 or damage that is sufficient to give the tenant the right to terminate the lease.[25]

Evidence submitted by 2500 Louisiana shows that the property was not materially damaged, and that Tenant continued operating.[26] Additionally, Tenant never notified 2500 Louisiana of any damage to the property or attempted to terminate its lease.[27] In fact, there was a press release dated September 2, 2021, confirming that Tenant's business was operational after the storm and accepting emergency dialysis patients.[28] Cameron submits no evidence to contradict these assertions. Because there is no evidence of

---

[22] Gulf American Indus. v. Airco Indus. Gases, 573 So. 2d 481, 486 (La. App. 5 Cir. 1990).
[23] Doc. 1-1 at 8.
[24] *Id.*
[25] *Id.* at 6.
[26] Doc. 17-9 at 1–2.
[27] *Id.* at 2.
[28] *Id.*

material damage, Cameron did not validly terminate the Agreement pursuant to Article 9.

Cameron also argues that 2500 Louisiana violated a condition of closing by failing to communicate the status of the property following Hurricane Ida.[29] Under the Agreement, a condition to closing is that all of 2500 Louisiana's representations and warranties must be true and correct in all material respects as of the closing date.[30] Section 10 of the Agreement provides that Cameron retained the right to terminate the Agreement if any condition to closing was not met.[31] Cameron argues that based on these provisions, "it was incumbent upon 2500 Louisiana to provide Cameron with the information needed to verify that these representations and warranties were true and correct after the storm."[32]

Despite Cameron's assertions, the Agreement does not contain any provision requiring prompt communication, and furthermore, Cameron's email terminating the Agreement was premature. The amendment to the Agreement provided for a closing date of September 16, 2021, and Cameron cancelled the Agreement on September 8, 2021. 2500 Louisiana responded to Cameron on September 8, 2021, more than a week before the closing date, informing Cameron that the property was not damaged and was fully operational.[33] 2500 Louisiana promptly addressed Cameron's concerns and informed Cameron well in advance of the closing date that there was no damage to the property and that Tenant's business was fully operational. Based on the evidence submitted, there is no genuine issue of material fact as to whether 2500 fulfilled their obligations under the Agreement. Even accepting all Cameron's

---

[29] Doc. 22 at 8.
[30] Doc. 1-1 at 7.
[31] *Id.*
[32] Doc. 22 at 4.
[33] Doc. 17-1 at 4.

7

contentions as true, 2500 Louisiana's actions do not meet the requirements for breach of contract as specifically identified in the clear and unambiguous language of the Agreement. Under the terms of the Agreement, Cameron breached the contract by failing to consummate the sale and pursuant to Section 12(b) of the Agreement 2500 Louisiana is entitled to receive the earnest money as liquidated damages.[34]

Furthermore, the Agreement provides that "the prevailing party in any action commenced due to the breach of any provision of this Agreement shall be entitled to recover from the other party all costs, expenses and reasonable attorney's fees incurred by the prevailing party."[35] Because Cameron breached the Agreement, 2500 Louisiana is entitled to all costs, including reasonable attorney's fees.

## CONCLUSION

For the foregoing reasons, 2500 Louisiana's Motion for Summary Judgment is **GRANTED. IT IS ORDERED** that 2500 Louisiana is entitled to the full amount of the interpleader funds and attorney's fees. 2500 Louisiana shall file a motion for the calculation of attorney's fees to be heard by Magistrate Judge Janis van Meerveld.

New Orleans, Louisiana this 7th day of November, 2022.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[34] Doc. 1-1 at 8.
[35] *Id.* at 8–9.